INGRAHAM, KENEDY & DAY v. THE CHICAGO, D. & M.
R. R. Co.

34  249<br>!114  433

1. Corporation municipal: STREETS: RAILROAD. A city may grant a right of way along one of its streets to a railroad company, without the consent of adjacent lot owners.

2. —— NAVIGABLE WATERS. Bayous and sloughs of the Mississippi river that are not required by the interests of commerce to be preserved for the purposes of navigation, are not covered by the ordinance of 1787, declaring the waters, therein referred to, public highways, but the same are subject to the control of the State or municipal authorities.

3. —— It is accordingly held that it was competent for the city of Dubuque to authorize a slough of the Mississippi river at that place, which had been formerly used for purposes connected with navigation, to be filled, and railroad tracks to be built over or along the same.

*Appeal from Dubuque District Court.*

FRIDAY, JUNE 14.

THIS is an action in chancery. The petition alleges that plaintiffs are the owners of lot 404, in the city of Dubuque, which lies upon a street or highway running along a navigable slough connecting with and being a part of the Mississippi river, so that said street or highway, and nothing more, is between plaintiffs' property and said navigable water. It is shown that the city of Dubuque was originally laid off under authority of certain acts of congress, and that, by a subsequent act, all right of the United States to the highway or street named was relinquished to the city of Dubuque, reserving the rights of third persons to the use of the same. It is averred that the lot in question was purchased by plaintiffs for the purpose of handling lumber thereon, and that it is valuable therefor, on account of its contiguity to the slough. That the city of Dubuque has given permission to defendant to lay

down a single railroad track along and over the street or highway, running along said slough, and that a track, under this authority, has been laid down near plaintiffs' lot, and defendant is threatening to build two other tracks upon the street, between the slough and plaintiffs' lot, and is now actually engaged at work filling up the highway for that purpose without permission of the city. The petition shows that the construction of the two additional tracks will cut off plaintiffs' communication with the slough and encroach upon it, and that defendant threatens to fill it up altogether or at least to such extent, as to destroy its navigable character. It is also shown that defendant has not paid nor tendered to plaintiff, the damages which they have or will sustain by the acts complained of.

The defendant, answering this petition, denies that the slough in question is navigable, and avers that, for a large part of the time, it has little or no water in it, and that only when the river is at a high stage can rafts or lumber be brought therein to a point opposite plaintiffs' lot. It is alleged that, in 1856, the city of Dubuque abandoned all efforts, which before that time had been made, to open and keep open said slough for purposes of navigation, and authorized it to be filled up and streets to be built across it, and sold the land between the slough and the river to parties who laid it out and plotted it into town lots. It is also shown that said slough is crossed by another railroad, and that nearly all of the land situated thereon, formerly used as a levee, has been filled up, having been wholly abandoned for the purpose of a public landing. It appears, both from the bill and answer, that the land between the street running along by plaintiffs' lots and the Mississippi river, was relinquished by the United States to the city of Dubuque, and the answer, as above noted, avers that it has been conveyed by the city to other parties. It is also alleged in the answer that the city authorities have

granted to two other railroad incorporations the right to build each a track along the street which plaintiffs claim is about to be obstructed, and that defendant, by agreement with these companies, is authorized to construct such tracks with the necessary switches.

The defendant avers and so charges that it is now, and always has been, ready and willing to pay plaintiffs all damages assessed against it for private property taken or damaged by the road.

Upon this case, as made by the bill and answer, plaintiffs moved the court for a preliminary injunction. The motion was overruled, and from this decision of the court the plaintiffs appeal.

*D. E. Lyon* for the appellants.

*Shubael P. Adams* and *Shiras, Vandusee & Henderson,* for the appellee.

BECK, Ch. J. — I. The answer of defendant denies all of the allegations of plaintiffs' petition upon which are based their claim for the relief of a preliminary injunction. The equity of their bill is founded upon the following alleged facts: 1st. The navigable character of the slough in question; 2d. The absence of authority from the city for the construction of the railroad tracks, which are being built by defendant upon the street fronting plaintiffs' lot; 3d. The existence in the city of the legal title to the street, to be held subject to the rights of the plaintiffs to the use of the same.

The answer explicitly denies that the slough is navigable, and avers that the city has authorized it to be filled up, and sets out the authority derived from the city under which defendant is constructing its railroad tracks sought to be enjoined. The alleged facts, essential to support plaintiffs' right to the relief claimed, are thus denied. The power of the city to appropriate its streets and lands, devoted to

public purposes, for the use of a railroad, to the extent of the construction of two tracks thereon, cannot be questioned. It is sustained by more than one decision of this court. *Milburn* v. *The City of Cedar Rapids*, 12 Iowa, 246; *City of Clinton* v. *Cedar Rapids & M. R. R. Co.*, 24 id. 456; *Cook* v. *City of Burlington*, 30 id. 94.

The fact that the street upon which the railroad tracks complained of are being constructed, separates plaintiffs' lot from a navigable slough, or from the Mississippi river itself, does not deny the application of the doctrine just stated to this case. The land used by the defendant, and upon which its track is built, is either a part of the public street or lies between the street and the navigable slough. In the first instance, if it be a street, as we have seen, the city may permit it to be occupied by railroad tracks; if it be beyond the street, it is either the property of others or held by the city for public purposes. In neither case can plaintiff restrain its use by the railroad company, authority therefor having been had from the city or the owners. And it may be conceded that plaintiffs have the rights of riparian owners. In that case, the railroad company may appropriate the land between plaintiffs' lot and the navigable water for the purpose of constructing its tracks. *Tomlin* v. *Dubuque B. and M. R. R. Co.*, 32 Iowa, 106.

The right of plaintiffs to recover damages on account of the construction of the railroad tracks complained of, is not denied or passed upon. While the petition alleges that no damages have been tendered to or paid plaintiffs, the answer was that defendant is ready and willing to pay all legal damages assessed against it in favor of plaintiffs. The petition shows no facts, as the insolvency of defendant or the like, upon which may be based a supposition that any amount of damages which plaintiffs may recover cannot be collected. If it be so that plaintiffs are entitled to damages for the acts complained of, that fact is not made,

by the allegation of other proper circumstances, the foundation of the relief sought by the preliminary injunction.

From the consideration we have thus far given the case, it appears that the answer of defendant fully meets and denies all the equities of the petition. The injunction, was, therefore, properly refused. *Anderson* v. *Reid,* 11 Iowa, 178; *Stevens* v. *Myers,* id. 183; *Taylor* v. *Dickinson,* 15 id. 483.

II. A position of plaintiff's council, as to the right of the city to authorize the filling up of the slough, demands and will receive brief attention.

The plaintiffs insist that, as the slough in front of their lot is a part of the Mississippi river, and is navigable, it is not competent for defendant, even under authority derived from the city, to fill it up, and thus destroy the highway, secured by repeated legislative acts of congress in the waters of that river; that the character of the river extends to all its parts, and that its arms, bayous and sloughs, which are navigable, are highways, and are protected by the numerous laws, treaties and ordinances applicable to the river itself.

It appears from the bill and answer that the city of Dubuque was originally laid out under authority of an act of congress, upon the west bank of the Mississippi river, its eastern boundary being the slough in question. For many years the levee, or public landing of the city, was upon the bank of this slough; but that, in 1856, it was abandoned because of insufficient depth of water. Between the slough and the main channel of the river are low lands, divided by other sloughs, the title to which was acquired by the city from the United States, and afterward conveyed to the Dubuque Harbor Improvement Company, an incorporation which has laid off into city blocks, lots, and streets all the land between plaintiffs' lot and the main channel of the river. The city has authorized the filling up of the slough, and the building of streets across the

same. The title to these overflowed and low lands was confirmed to the city by chapter 88, acts 8th general assembly, which released to the city all the interest of the State thereto. These lands are within the corporate limits of the city, which has authority, by its charter, to establish and vacate wharves and public landings, and " to change the channel of water courses." Act 6, Gen. Ass., ch. 210, § 7. Under the authority thus conferred, it cannot be doubted that the city possesses the power to fill up, or authorize the defendant to fill up, the slough in front of plaintiffs' lot, unless it possesses the character of navigability attached to the river itself, which will protect it from interference under the laws of the State.

The object of the many treaties, ordinances and statutes declaring the Mississippi river navagable confessedly was, to secure free transit upon its waters for the vessels of the people to whom the right of navigation therein was intended to be secured. These laws were not designed and do not operate to interfere with the authority of the States within whose jurisdiction it flows, to improve its navigation, or to do any other acts that will not affect prejudicially its free use for such purpose. They are not intended to abridge the power of the local governments to construct levees and dikes to confine the waters within its proper channel, to reclaim overflowed land, to construct wharves and streets upon its banks, whereby the very use of navagation for which it is preserved may be the better enjoyed, nor do other acts, proper in the exercise of governmental authority, demanded by the interest of the people and the progress of the country, and not calculated to hinder the free navigation of the river. While the riparian owner may not interfere with the natural flow of the water in the sloughs and bayous, if another would be injured thereby,' such restriction is not imposed upon the State where the good of whole communities demands improve-

ments of the kind just named.   It is quite true, as argued by plaintiffs' counsel, that the slough in question is a part of the river, but the conclusion that the State government can no more interfere with its navigation than with the navigation of the river, cannot be admitted.   The navigation of the slough is in no sense the navigation of the river, and if it be filled up, the navigation of the river is not destroyed or affected?   The river may be at a certain point of sufficient depth for navigation from one shore to the other.   Yet at that point the interests of navigation may demand that a wharf be built into the river, for a given distance, without obstructing the free use of the river for vessels.   Can it be claimed that a riparian owner, whose land is thus practically deprived of the advantages of being upon the river bank, may claim relief, on the ground that the navigation of the river is affected.   Clearly not.   The rule undoubtedly is, that the proper local governments may make all such improvements upon the banks of this great river, which may be demanded by the good of the people, do not abridge its free use for navigation, and which do not make it less navigable.   Bayous, arms and sloughs that are not required by the interests of commerce to be preserved for the purposes of navigation, are under control of the State governments.   These do not partake of the character of the waters refered to in the ordinance of 1787, article 4, which are declared to be common highways.   *The People* v. *The City of St. Louis*, 5 Gilm. 350.   Applying these principles to the case before us, we do not hesitate to hold that the facts disclosed by the bill and answer, are not such as establish the obstruction to the navigation of the river.   The act of the city in authorizing the filling up of the slough, was for the purpose of improving property within its limits, reclaiming overflowed land and, by establishing a wharf upon the main channel of the river, enabling its people the better to enjoy the right to its free

navigation. As we have seen, the authority of the city to make these improvements is derived from the State, and in its exercise the defendant was empowered to construct its railway tracks upon embankments made in the slough, upon which plaintiffs' lot fronts. We have before remarked that the right of plaintiff to recover damages for the location of the railroad is not before us and is not considered.

The judgment of the district court is

Affirmed.